Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
Email: ykim@kimlf.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JONATHAN ESPINAL, DAYANA ALICEA, and TOM FANSLAU *on behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT and JURY DEMAND** |

Plaintiffs, Jonathan Espinal, Dayana Alicea, and Tom Fanslau, by way of Class Action Complaint and Jury Demand against Defendant, Portfolio Recovery Associates, LLC. (hereinafter "Defendant" or "PRA"), and John Does 1 to 10, state:

## NATURE OF THE CASE

1. This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

2. PRA violated the FDCPA by filing debt collection lawsuits against Plaintiffs and other New Jersey consumers containing false statements regarding the assignment and chain of title of the alleged debts, thereby making false, deceptive, and misleading statements in their collection complaints.

3. Plaintiffs seek actual and statutory damages, attorney's fees, and costs on behalf of themselves and the class.

## Jurisdiction and Venue

4. This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

5. Venue in this action properly lies in the District Court of New Jersey, Newark Vicinage, because Defendants regularly do business in this district.

## Parties

6. Plaintiff, Jonathan Espinal, is a natural person residing at 805 Canal Street, Apt. 416, Chattanooga, Tennessee 37402.

7. At all times relevant to this lawsuit, namely when PRA sued Jonathan Espinal in New Jersey state court, he was a citizen of the State of New Jersey.

8. Plaintiff, Dayana Alicea, is a natural person residing at 35 Tara Lane, Barnegat Township, Ocean County, New Jersey 08005.

9. At all times relevant to this lawsuit, Dayana Alicea was a citizen of the State of New Jersey.

10. Plaintiff, Tom Fanslau, is a natural person residing at 352 Steelmanville Road, Egg Harbor Township, Atlantic County, New Jersey 08234.

11. At all times relevant to this lawsuit, Tom Fanslau was a citizen of the State of New Jersey.

12. Defendant Portfolio Recovery Associates, LLC is a limited liability company with an office located at 120 Corporate Boulevard, Norfolk, Virginia 23502.

13. PRA is a debt buyer and debt collector engaged in the business of purchasing defaulted consumer accounts and collecting them through, *inter alia*, letters, phone calls, credit

reports, and lawsuits.

14. Plaintiffs are informed and believe, and on that basis allege, that Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of PRA that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by PRA and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

15. Some or all of John Does 1-10 set the policies and practices complained of herein.

16. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

## FACTUAL ALLEGATIONS

**A. Allegations regarding Defendants' practices generally**

17. PRA is in the business of purchasing and taking assignment of defaulted credit accounts originally extended by other creditors, which it then enforces against the borrowers through collection letters, credit reporting, lawsuits, and post-judgment collection efforts. This is PRA's principal business.

18. In the course of its business, PRA has purchased and taken assignment of numerous defaulted accounts originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.

19. PRA purchases past-due and defaulted consumer accounts for pennies on the dollar, and then attempts to collect those accounts itself or through other collection agencies or

debt collectors.

20. When attempting to collect debts, PRA uses mail, telephone, internet and other instruments of interstate commerce.

21. The Maryland Court of Appeals described the debt buying industry, consisting of players like PRA in this case, as follows:

THE DEBT-BUYING INDUSTRY

> Traditionally, when a borrower or customer failed to pay a debt on time, the creditor would do what was needed to collect the debt either by engaging with the debtor directly or by employing an attorney or outside debt collector to do so. That still occurs, of course, but a new business model that first developed in the late 1980s has become predominant in the debt collection universe, largely because (1) so much of the debt arrearage in the United States, and in Maryland, is credit card debt, and (2) Federal banking regulations require credit card companies that are bank-related to charge off credit card debt that has been delinquent for six months.
>
> The new model, for those companies, and others, is to sell their delinquent accounts to debt buyers for pennies on the dollar - normally between four and five cents but less for older accounts - and thereby recoup at least something without having to bear the expense of further collection efforts. The sales are in bulk. A three-year study by FTC revealed the sale of more than 5,000 "portfolios" containing nearly 90 million consumer accounts with a face value of $143 billion at a cost of $6.5 billion. *2013 FTC Report* at ii, 8, and Table 2.
>
> While beneficial to the initial creditor in light of the charge-off requirement and lucrative to the debt buyer, the manner in which this new model developed and debt buyers carried on their business created significant consumer protection issues. In its 2013 Report, based in part on a 2009 Study, FTC observed that it received "more consumer complaints about debt collectors, including debt buyers, than about any other single industry." *2013 FTC Report* at i. *See* also *Collecting Consumer Debts - The Challenges of Change, A Workshop Report*. Federal Trade Commission, February 2009 (hereafter *2009 FTC Report*).
>
> In its 2013 Report, FTC noted that, in its 2009 Report, it had expressed concern that debt buyers "may have insufficient or

> inaccurate information when they collect on debts, which may result in collectors seeking to recover from the wrong consumer or recover the wrong amount." *2013 FTC Report*. The Commission found that, although debt buyers normally receive from the initial creditor the information needed to be disclosed to the debtor under the Federal Debt Collection Practices Act (15 U.S.C. § 1692g) they often do not receive data relating to disputes raised by the debtor or a breakdown of how much of the debt is for interest, fees, or penalties, and that they rarely disclose to the debtor other information, such as data indicating that collection may be barred by limitations, that may be relevant to whether the alleged debtor is the actual debtor or owes the money and, if so, how much. *2013 FTA Report* at iii-iv.

*LVNV Funding LLC v. Finch*, 207 A.3d 202, 206 (Md. 2019).

22. In the course of its business, PRA has enforced its assigned accounts against New Jersey consumers through collection letters, lawsuits, and post-judgment collection efforts.

23. PRA is a debt collector as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

**B. The Account Purchases and False Chain of Assignment**

24. Sometime prior to the dates these actions were filed, in a series of transactions, PRA allegedly purchased and took assignment of consumer debts that had allegedly been extended to Plaintiffs Espinal, Alicea, and Fanslau.

25. The debt allegedly owed by Plaintiff Espinal arose from a consumer credit card account, specifically a Citibank N.A. / My Best Buy Visa account, used primarily for personal, family, or household purposes.

26. The debt allegedly owed by Plaintiff Alicea arose from a consumer credit card account, specifically a Citibank N.A. / The Home Depot account, used primarily for personal, family, or household purposes.

27. The debt allegedly owed by Plaintiff Fanslau arose from a consumer credit card account, specifically a Synchrony Bank / Sam's Club account, used primarily for personal,

family, or household purposes.

28. On December 30, 2024, Defendant initiated a debt collection action against Plaintiff Fanslau in the Superior Court of New Jersey, Law Division, Special Civil Part, Atlantic County, under Docket No. ATL-DC-11602-24. The collection complaint attached as **Exhibit A**.

29. On December 30, 2024, Defendant initiated a debt collection action against Plaintiff Alicea in the Superior Court of New Jersey, Law Division, Special Civil Part, Ocean County, under Docket No. OCN-DC-18161-24. The collection complaint attached as **Exhibit B**.

30. On March 18, 2025, Defendant initiated a debt collection action against Plaintiff Espinal in the Superior Court of New Jersey, Law Division, Special Civil Part, Burlington County, under Docket No. BUR-DC-3555-25. The collection complaint attached as **Exhibit C**.

31. In the Special Civil Part of the Superior Court of New Jersey, "[t]he complaint in actions to collect assigned claims shall set forth with specificity . . . the full chain of the assignment of the claim, if the action is not filed by the original creditor." N.J. Court Rule 6:3-2(c).

32. In each of the collection complaints, Defendant represented that the chain of title of the respective account included MHC Receivables LLC, Credit One, and FNBM LLC.

33. These representations were false, inaccurate, and misleading.

34. The actual chains of assignment did not include MHC Receivables LLC, Credit One, or FNBM LLC as intermediate assignees between the original creditors and PRA.

35. In the case of Plaintiff Fanslau, Synchrony Bank sold the account directly to PRA on March 12, 2024. See **Exhibit D**, Certification of Meryl Dreano, an authorized representative of PRA.

36. In the case of Plaintiff Espinal, Citibank N.A. sold the account directly to PRA on

August 16, 2024. See **Exhibit E** at p. 4, Certification of Dwayne Davis, Custodian of Records for PRA ("The account was assigned to plaintiff PRA by Citibank N.A. on August 16, 2024. There are no other assignments or parties involved.")

37. In the case of Plaintiff Alicea, upon information and belief, Citibank N.A. sold the account directly to PRA sometime before December 30, 2024.

38. The false representations regarding the chain of assignment are material and misleading because they falsely suggest multiple assignments that never occurred, potentially creating the false impression of additional validation or documentation of the debts, or obscuring the actual transactions through which PRA acquired the accounts.

39. The false chain of title representations may also serve to confuse consumers and courts about the actual ownership of and right to collect on the accounts at issue.

40. By falsely representing that multiple intermediate entities were involved in the chains of assignments, PRA misrepresented the character, amount, and legal status of the debts it sought to collect in violation of the FDCPA.

**C. Pattern and Practice**

41. PRA made the same false representation regarding the chain of assignment in debt collection complaints filed against multiple New Jersey consumers during the same time period.

42. In each of these matters, PRA represented in formal court pleadings that the chain of title included MHC Receivables LLC, Credit One, and FNBM LLC as intermediate assignees, when in fact the original creditors sold the accounts directly to PRA.

43. This pattern of false representations demonstrates that PRA's conduct was not an isolated error or inadvertent mistake, but rather a systematic practice affecting multiple consumers.

44. The false representations were made in formal court pleadings filed with New Jersey courts, which carry additional weight and credibility and are particularly likely to mislead consumers and the courts.

**D. Collection Activities Based on False Representations**

45. Based on these false representations about the chain of title, PRA engaged in extensive collection activities against New Jersey consumers, including Plaintiffs and members of the proposed class.

46. PRA filed lawsuits in New Jersey state courts seeking judgments against consumers based on the falsely represented chain of assignment.

47. PRA sent collection letters and other written communications to consumers demanding payment of debts allegedly acquired through the falsely represented chain of assignment.

48. PRA reported information about these accounts to credit reporting agencies, potentially including false or misleading information about the chain of ownership.

49. PRA engaged in post-judgment collection activities, including wage garnishment and bank levies, to collect on judgments obtained through litigation based on the false chain of title representations.

50. Consumers, including Plaintiffs and members of the proposed class, were forced to defend lawsuits based on false information about the chain of assignment.

51. Plaintiffs incurred costs, including potential attorney’s fees, in responding to and defending against PRA’s collection lawsuits based on false representations.

52. Plaintiffs suffered anxiety, stress, and emotional distress as a result of being sued based on false and misleading information.

53. Consumers potentially made payments to PRA based on the false representations about the chain of assignment, believing that PRA had properly acquired the accounts through the represented chain of title.

54. The false representations about the chain of assignment misled consumers about the actual circumstances under which PRA acquired the accounts and PRA's right to collect on those accounts.

55. PRA's false representations in court pleadings undermined the integrity of the judicial process and the ability of consumers to assess the validity of the claims being asserted against them.PRA's false representation about the chain of assignment frustrated Fanslau's ability to make an informed decision with respect to his response to PRA's collection lawsuit.

56.

**E. Plaintiff Espinal**

57. Espinal relied on PRA's false representations in the collection lawsuit to his detriment.

58. Based on PRA's lawsuit containing false representations about the chain of assignment, Espinal was forced to hire an attorney to defend the lawsuit, incurring attorney's fees and costs.

59. Espinal experienced stress, anxiety, and embarrassment.

60. Espinal was deceived by PRA's false representations that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment when in fact they were not.

61. PRA never informed Espinal that the chain of assignment was false at the time PRA filed and served the collection complaint.

62. PRA represented to Espinal and the court that MHC Receivables LLC, Credit

One, and FNBM LLC were part of the chain of title when PRA knew or should have known this was false.

63. Had Espinal known that PRA's representation about the chain of assignment was false, he would have raised this as a defense in the collection lawsuit.

64. PRA's false representation about the chain of assignment frustrated Espinal's ability to make an informed decision with respect to his response to PRA's collection lawsuit.

65. PRA's false representation about the chain of assignment deprived Espinal of his right to accurate information about the character, amount, and legal status of the alleged debt.

93. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA made false, deceptive, and misleading representations in violation of 15 U.S.C. § 1692e.

94. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA made a false representation of the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

66. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA used false representation and deceptive means to collect the debt in violation of 15 U.S.C. § 1692e(10).

95. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA used unfair and unconscionable collection tactics in violation of 15 U.S.C. § 1692f.

67. PRA's violations of the FDCPA were knowing, intentional, and willful, or at minimum were made with reckless disregard for the accuracy of the chain of assignment representation.

68. As a result of PRA's violations of the FDCPA, Espinal suffered actual damages including the judgment entered against him.

**F. Plaintiff Alicea**

69. Alicea relied on PRA's false representations in the collection lawsuit to her detriment.

70. Based on PRA's lawsuit containing false representations about the chain of assignment, Alicea was forced to initially defend the lawsuit pro se and later hire an attorney to attempt to vacate the default judgment, incurring attorney's fees and costs.

71. Alicea experienced stress, anxiety, and embarrassment.

72. Alicea was deceived by PRA's false representations that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment when in fact they were not.

73. PRA never informed Alicea that the chain of assignment was false at the time PRA filed and served the collection complaint.

74. PRA represented to Alicea and the court that MHC Receivables LLC, Credit One, and FNBM LLC were part of the chain of title when PRA knew or should have known this was false.

75. Had Alicea known that PRA's representation about the chain of assignment was false, she would have raised this as a defense in the collection lawsuit.

76. PRA's false representation about the chain of assignment frustrated Alicea's ability to make an informed decision with respect to her response to PRA's collection lawsuit.

77. PRA's false representation about the chain of assignment deprived Alicea of her right to accurate information about the character, amount, and legal status of the alleged debt.

118. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC

were in the chain of assignment, PRA made false, deceptive, and misleading representations in violation of 15 U.S.C. § 1692e.

119. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA made a false representation of the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

78. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA used false representation and deceptive means to collect the debt in violation of 15 U.S.C. § 1692e(10).

131. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA used unfair and unconscionable collection tactics in violation of 15 U.S.C. § 1692f.

79. PRA's violations of the FDCPA were knowing, intentional, and willful, or at minimum were made with reckless disregard for the accuracy of the chain of assignment representation.

80. As a result of PRA's violations of the FDCPA, Alicea suffered actual damages including the entry of a default judgment against her.

**G. Plaintiff Fanslau**

67. Fanslau relied on Defendant's false chain of assignment to his detriment.

68. Based on PRA's lawsuit containing false representations about the chain of assignment, Fanslau was forced to hire an attorney to defend the lawsuit, incurring attorney's fees and costs.

69. Fanslau experienced stress, anxiety, and embarrassment.

70. Fanslau was deceived by PRA's false representations that MHC Receivables

LLC, Credit One, and FNBM LLC were in the chain of assignment when in fact they were not.

71. PRA never informed Fanslau that the chain of assignment was false at the time PRA filed and served the collection complaint.

72. PRA represented to Fanslau and the court that MHC Receivables LLC, Credit One, and FNBM LLC were part of the chain of title when PRA knew or should have known this was false.

73. Had Fanslau known that PRA's representation about the chain of assignment was false, he would have raised this as a defense in the collection lawsuit

74. PRA's false representation about the chain of assignment frustrated Fanslau's ability to make an informed decision with respect to his response to PRA's collection lawsuit.

75. PRA's false representation about the chain of assignment deprived Fanslau of his right to accurate information about the character, amount, and legal status of the alleged debt.

76. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA made false, deceptive, and misleading representations in violation of 15 U.S.C. § 1692e.

77. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA made a false representation of the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

79. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA used false representation and deceptive means to collect the debt in violation of 15 U.S.C. § 1692e(10).

80. By falsely representing that MHC Receivables LLC, Credit One, and FNBM LLC were in the chain of assignment, PRA used unfair and unconscionable collection tactics in

violation of 15 U.S.C. § 1692f.

81. PRA's violations of the FDCPA were knowing, intentional, and willful, or at minimum were made with reckless disregard for the accuracy of the chain of assignment representation.

82. As a result of PRA's violations of the FDCPA, Fanslau suffered actual damages.

## CLASS ACTION ALLEGATIONS

81. Plaintiffs bring this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

82. Subject to discovery and further investigation which may require Plaintiffs to modify the following class definition at the time Plaintiffs move for class certification, Plaintiffs seek certification of a class initially defined as follows:

> **Class**: All natural persons against whom Portfolio Recovery Associates, LLC, from December 30, 2024 to the date this action is certified as a class action, filed a collection lawsuit in the Superior Court of New Jersey stating that the chain of title/assignment included entities that are, in fact, not in the chain of title/assignment.

83. Plaintiffs seek to recover statutory damages, actual damages, and attorney's fees and costs on behalf of themselves and all class members under the claims asserted herein to the extent allowed by law.

84. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

85. Upon information and belief, PRA filed hundreds or thousands of collection complaints in New Jersey containing this false chain of assignment representation during the relevant time period by representing that the chain of title included MHC Receivables LLC, Credit One, FNBM LLC or other entities that are not in the chain of title.

86. There are questions of law and fact common to the members of the Class that

predominate over questions affecting only individuals, including but not limited to:

A. Whether PRA is a debt collector under the FDCPA;

B. Whether PRA's representation about the chain of assignment was false;

C. Whether PRA's false representation about the chain of assignment violates 15 U.S.C. § 1692e;

D. Whether PRA's false representation about the chain of assignment violates 15 U.S.C. § 1692e(2)(A) by falsely representing the character or legal status of debts;

E. Whether PRA's false representation about the chain of assignment violates 15 U.S.C. § 1692e(10) by using false representation or deceptive means to collect debts;

F. Whether PRA's false representation about the chain of assignment violates 15 U.S.C. § 1692f;

G. Whether class members are entitled to statutory damages under 15 U.S.C. § 1692k(a)(2)(B);

H. Whether class members are entitled to actual damages; and

I. Whether class members are entitled to attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3).

87. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense by avoiding hundreds or thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

88. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs are members of the Class.

89. Plaintiffs' claims arise from the same course of conduct by PRA—namely, PRA's systematic practice of making false representations about the chain of assignment in collection

lawsuits filed against New Jersey consumers.

90. Plaintiffs' claims are based on the same legal theories as the claims of all class members, including violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

91. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

92. The central issue in this case—whether PRA made false representations about the chain of assignment in collection lawsuits—is common to all class members and can be proven through common evidence, including PRA's collection complaints, the Bills of Sale and Affidavits of Sale from original creditors like Synchrony Bank and Citibank N.A., and PRA's admissions regarding the falsity of the chain of assignment representation.

93. Individual issues, if any, are limited and do not predominate over the common questions affecting all class members.

94. Common questions predominate because the false representation about the chain of assignment was identical or substantially similar in all collection lawsuits filed by PRA during the relevant time period.

95. Plaintiffs do not have interests antagonistic to those of the Class.

96. The Class, of which Plaintiffs are members, is readily identifiable. PRA has records of each collection lawsuit it filed in New Jersey containing the false chain of assignment representation.

97. Plaintiffs will fairly and adequately protect the interests of the Class and have retained competent counsel experienced in the prosecution of consumer protection class actions and FDCPA litigation.

98. Proposed Class Counsel is the Kim Law Firm LLC, which has extensive

experience in prosecuting consumer protection claims, FDCPA litigation, and class actions.

99. Kim Law Firm LLC has successfully represented numerous consumers in FDCPA cases and has the resources and expertise necessary to prosecute this class action.

100. Plaintiffs and proposed Class Counsel have investigated and identified the claims in this action and are prepared to vigorously prosecute this action on behalf of the Class.

101. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for PRA in this action.

102. The prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

103. Prosecution as a class action will eliminate the possibility of repetitious litigation.

104. Individual FDCPA claims are relatively small compared to the cost of bringing individual lawsuits, making class treatment the superior method for adjudicating these claims.

105. A class action will achieve judicial efficiency by resolving in a single proceeding the common questions of law and fact arising from PRA's systematic practice of making false representations about the chain of assignment.

106. Class members have a substantial interest in litigating their claims together to ensure consistent results and to hold PRA accountable for its systematic violations of the FDCPA.

107. Plaintiffs do not anticipate any difficulty in the management of this litigation. Proposed Class Counsel has the experience and resources necessary to manage this class action.

**COUNT ONE**
**Violations of the Fair Debt Collection Practices Act**

108. Plaintiffs reassert and incorporate herein the allegations contained in the preceding and following paragraphs.

109. Plaintiffs and the Class members are “consumers” as defined by 15 U.S.C. § 1692a(3).

110. The debts are consumer “debts“ as defined by 15 U.S.C. § 1692a(5).

111. Defendant is a “debt collector“ as defined by 15 U.S.C. § 1692a(6) and the interpretations thereof.

112. Defendant PRA’s collection complaints are “communications” as defined by 15 U.S.C. § 1692a(2).

113. At all times relevant hereto, Defendant PRA actively participated in the collection of consumer debts allegedly owed by Plaintiffs and other New Jersey consumers.

114. Defendant PRA is liable for its own acts in filing collection complaints containing false representations about the chain of assignment and for the acts and omissions of its agents, employees, and representatives.

115. By falsely representing in judicial collection complaints that the chain of title included “MHC Receivables LLC, Credit One, FNBM LLC” when in fact the accounts were sold directly from the original creditor to Portfolio Recovery Associates, LLC, Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

116. The violations of the FDCPA described herein constitute *per se* violations.

117. Based on any one or more of those violations, Defendant is liable to Plaintiffs and the Class members for damages, attorneys’ fees and costs under 15 U.S.C. § 1692k.

**WHEREFORE**, as to Count One, Plaintiffs, on behalf of themselves and the putative Class members, hereby request a Judgment against Defendant Portfolio Recovery Associates, LLC,

a. For certification of this instant matter as a class action, appointing the named Plaintiffs as representatives of the Class, and appointing the attorneys of Kim Law Firm LLC as class counsel;

b. For statutory damages in favor of Plaintiffs pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. For statutory damages in favor of the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii), not to exceed the lesser of $500,000 or 1 per centum of the net worth of PRA;

d. For actual damages in favor of Plaintiffs and the Class pursuant to 15 U.S.C. § 1692k(a)(1), including the tax consequences of this action;

e. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

f. For pre-judgment and post-judgment interest; and

g. For such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues subject to trial by jury.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except the cases styled:

- *Portfolio Recovery Associates, LLC v. Tom Fanslau*, ATL-L-1263-25 (N.J. Super. Ct. Law Div.);
- *Portfolio Recovery Associates, LLC v. Jonathan Espinal*, BUR-DC-3555-25 (N.J. Super. Ct. Law Div.); and
- *Portfolio Recovery Associates, LLC v. Dayana Alicea*, OCN-DC-018161-24 (N.J. Super. Ct. Law Div.).

Dated: December 30, 2025

KIM LAW FIRM LLC

*s/Yongmoon Kim*
Yongmoon Kim
*Attorneys for Plaintiffs*